FILED IN CLERK'S OFFICE
U.S.D.C.-Atlanta

JAN 1 4 2005

LUTHER D. THOMAS, Clerk
BY: _____
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

*ORIGINAL*

| | | |
|---|---|---|
| **RONALD S. LEVENTHAL,** an Individual, Directly, Derivatively on behalf of Post Properties, Inc., a Georgia corporation, and Representatively on behalf of all other similarly situated Shareholders of Post Properties, Inc., a Georgia corporation, | : : : : : : : | **CIVIL ACTION FILE NUMBER: 1:04-CV-1445-JTC** |
| **Plaintiff,** | : : | |
| v. | : : | |
| **ROBERT C. GODDARD, III,** an Individual and as Chairman of the Board of Post Properties, Inc., a Georgia corporation, **DAVID P. STOCKERT,** an Individual, **SHERRY W. COHEN,** an Individual, **JOHN T. GLOVER,** an Individual, **CHRISTOPHER J. PAPA,** an Individual, **THOMAS D. SENKBEIL,** an Individual, and **THOMAS L. WILKES,** an Individual, | : : : : : : : : : : : : : : : | **JUDGE JACK T. CAMP** **BRIEF AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISQUALIFY THE LAW FIRM OF KING AND SPALDING LLP (INCLUDING ITS PARTNERS) AS COUNSEL** |
| **Defendants,** | : : : | **FOR INDISPENSABLE PARTY AND NOMINAL** |
| **AND POST PROPERTIES, INC.,** a Georgia corporation, | : : : | **DEFENDANT POST PROPERTIES, INC.** |
| **Indispensable Party and Nominal Defendant.** | : : | |

**January 14, 2005**

**BRIEF AND MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISQUALIFY
THE LAW FIRM OF KING AND SPALDING LLP
(INCLUDING ITS PARTNERS) AS COUNSEL FOR
INDISPENSABLE PARTY AND NOMINAL DEFENDANT
POST PROPERTIES, INC.**

The Plaintiff, Ronald S. Leventhal, an Individual, *In Propria Persona*, directly ("**Directly**"), derivatively on behalf of defendant Post Properties, Inc. (**"Derivatively"**) and representatively on behalf of all the shareholders of Post Properties, Inc. (**"Representatively"**) files this his BRIEF AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISQUALIFY THE LAW FIRM OF KING AND SPALDING LLP (INCLUDING ITS PARTNERS) AS COUNSEL FOR INDISPENSABLE PARTY AND NOMINAL DEFENDANT POST PROPERTIES, INC. ("**Brief**"), in support of its simultaneously filed MOTION TO DISQUALIFY THE LAW FIRM OF KING AND SPALDING LLP (INCLUDING ITS PARTNERS) AS COUNSEL FOR INDISPENSABLE PARTY AND NOMINAL DEFENDANT POST PROPERTIES, INC. ("**Motion**").

Leventhal proceeds, *in propria persona*, including Derivatively and to the extent permissible, Representatively. As to all capacities, Leventhal, is hereinafter

referred to as **("Plaintiff"** or **"Leventhal").** The Motion, and the facts and definitions therein, are incorporated by this reference into this Brief.

Leventhal moves this Court to disqualify the Law Firm of King and Spalding LLP and each and every attorney who is employed by, a partner in, or "of counsel" to the Law Firm of King and Spalding LLP ("**K & S**") from legally representing the Indispensable Party and Nominal Defendant Post Properties, Inc. ("**Post**"), or any legal representation of any director, officer or employee of K & S, in the above-styled matter.

## I. <u>INTRODUCTION</u>

Members of K & S are witnesses, unprotected by attorney-client privilege, to material facts underlying written Minutes and reports of Post regarding Leventhal's Derivative Demand and request for accounting information, as well as to the Vasquez Matter and Settlement.

K & S should be disqualified based upon such, as well as its improper role in representing Defendant Goddard[1] while at the same time Goddard and Post were involved in the Vasquez Matter. In the Vasquez Matter, K & S actively supported, approved, urged and recommended the payment of $300,000.00 in settlement to the attorneys for the Vasquez Plaintiffs so that certain of the Individual Defendants, including Defendant Goddard, could obtain broad releases.[2]

K & S should be disqualified because of its conflicted and dominant role as a member of the Special Litigation Committee that was to investigate the Concerns raised by Leventhal in the Derivative Demand Letter, including but not limited to Defendant Goddard.

The facts show Leventhal wrote to K & S regarding his concerns about the conflict K & S had in continuing to represent Post. Leventhal has also more

---

[1] K & S may have represented other Individual Defendants in addition to Goddard, but there is documentary evidence of the Goddard representation.

recently raised this issue.  His concerns as to, among other things, the conflict, were ignored.

Leventhal agrees that, in general, a party does have the right to counsel of its choice, with the party having the right (as compared to the attorney) to assert the attorney-client privilege.  An adverse party does not have the right to bring a motion to disqualify, for strategic purposes, to delay or to disadvantage another party.  However, as more particularly discussed herein, where an attorney is a witness to material facts unprotected by privilege and has conflicts, the attorney must be disqualified.  In this case K & S favored the Individual Defendants, in derogation of the interests of the Shareholders of Post, is a witness, and must be disqualified.[3]

This is not a case where there is just the appearance of a conflict; the facts evidence an actual conflict, ethically, factually and legally.  The protection is for Post who, although a nominal defendant, is in actuality the beneficiary of any derivative recovery against the Individual Defendants.  The interest of Post is,

---

[2] It is reasonable to conclude that the actions taken by K & S in the Vasquez Matter are actionable by Post or anyone acting on behalf of Post.

[3] Moreover, the client's privilege is limited.  For example, the privilege cannot be invoked by an attorney concerned about protecting his own actions and extends only to confidential communications for rendering legal advice to the client.

therefore, adverse to those of the Individual Defendants.[4],[5]

## II. BACKGROUND

For some time, K & S must have been aware of its status as a witness and the ethical conflict in representing Post in this matter. Even though the Vasquez Matter was not settled in February of 2004, K & S responded to Leventhal's Derivative Demand Letter sent in February, 2004 expressly on behalf of both Goddard and Post. See Motion and Exhibits thereto. [6]

K & S also wrote to Leventhal in April, 2004 on behalf of both Goddard and Post at a time when the Special Litigation Committee was purportedly investigating Leventhal's Concerns which were, among other things, as to the misconduct of Goddard and the impact of that misconduct on Post and its Shareholders.

K & S was the dominating member of the Special Litigation Committee, which was attended by, at least, Individual Defendant Cohen. The investigation

---

[4] For the purposes of this Motion, terms uses in the singular, such as "witness," include the plural. For example, Post as a "witness" includes not only the corporate entity, but its directors, officers and employees. Further, all terms not defined herein should have the same meaning as ascribed to them in the Record of this matter.

[5] As is with the Shareholders as a class.

[6] K & S even selected or agreed to a retroactive settlement date for the benefit of certain of the Individual Defendants, including Goddard, and to seek to undercut Leventhal's Derivative Concerns.

was even coined the "King and Spalding LLP's investigation." Leventhal questioned this of K & S on April 8, 2004, expressing concern about K & S representing both Goddard and Post. Although K & S then wrote Leventhal on May 3, 2004 solely on behalf of Post, on that same date K & S admitted it was now a part of the Special Litigation Committee which subsequently issued the result of the "King and Spalding LLP's investigation" to find no merit to Leventhal's Concerns, including against Goddard.

The involvement of K & S in that "investigation" is in direct contravention of Georgia law, makes partners and members of K & S witnesses to material facts in this case, and demolishes any argument that discussions K & S may have had with members of Post, regarding, at least, Leventhal, is protected by the attorney-client privilege. K & S represented at least Goddard during this critical time frame. It attended Special Litigation Committee with Cohen. Moreover, the facts show that K & S was hampered in the "investigation" due to its ethical duties. As the foregoing shows, as to being witnesses and due to ethical and related conflict matters, K & S must be disqualified from representing Post.

## IV. ARGUMENT AND CITATION OF AUTHORITY

### 1. Leventhal Has Standing

Leventhal has standing to bring this Motion. See Franchise Tax Board v.

Alacan Aluminum Limited, 493 U.S. 331, 110 S.Ct. 661 (1990) (holding in general shareholder has standing when corporation's management has refused to pursue an action for reasons other than good faith business judgment); Womble v. Womble, 228 Ga. 10, 183 S.E.2d 747 (1971) (holding plaintiff had standing to move for disqualification of defendant's attorney) and Rogers v. Hurt, Richardson, Garner, Todd & Cadenhead, 203 Ga. app. 412, 417 S.E.2d 29 (1992) (holding shareholders had standing). The facts show that Leventhal is a shareholder in Post.

Moreover, the Individual Defendants, management of Post, along with K & S, have refused to properly investigate and pursue the Concerns of Leventhal based upon a contention of business judgment. Even if Leventhal were not a shareholder, he still would have standing to ask this Court to grant this Motion.

**2.    The Motion Is Timely, The Conflict Significant And The Benefits Of Disqualification Outweigh The Cost**

A motion to disqualify an adverse party's attorney should be made with "reasonable promptness after a party discovers the facts which lead to the motion." Yates v. Dublin Sir Shop, Inc., 260 Ga. App. 369, 372, 579 S.E.2d 796 (2003). In the instant case, the Motion is timely made. Leventhal notified K & S what he suspected was its conflict on April 8, 2004. The Complaint was filed as was the Amended Complaint. Leventhal has allowed Post and the Individual Defendants additional time in which to respond to the Amended Complaint. Thus, there is no

- 6 -

prejudice to Post in granting the Motion. Leventhal has acted promptly and therefore the Motion is timely.  Moreover, the minutes, later produced by K & S, of the Special Litigation Committee, weigh heavily on this Motion.   Therefore, Leventhal proceeded diligently.

In addition to timeliness, the Court should examine the circumstances surrounding the case, along with the "seriousness of the conflict alleged and the extent to which public confidence in the administration of justice might be affected were the motion denied."  Id.  The conflict due to the non-independence of K & S and its status as a witness, is significant.

Additionally, if this Motion were denied, public confidence in the administration of justice would be negatively impacted because a denial would lead to the conclusion that a law firm can proceed in an unbiased manner, contrary to published law, as to a public company.  If the Motion were denied, public confidence in securities law and the rights of shareholders would be undermined.

Moreover, the cost of disqualifying K & S does not outweigh the benefit that would result from disqualifying K & S.  Notably, K & S should have realized that its entry into the role of investigator of the Concerns of Leventhal (of significant import to Post's shareholders) was improper, unethical and contrary to the best interests of Post and its Shareholders.

- 7 -

Further, K & S should not realize monetary compensation from its representation and should not be allowed to retain attorney's fees for a conflict. That is especially true when that work was contrary to the best interests of Post and its Shareholders.[7] It is more than interesting to note that in the Vasquez Matter, there is nothing in the record explaining why the Vasquez Plaintiffs' attorney were paid $300,000.00 in attorney fees, when typically each party bears their own costs, including the payment of attorney's fees, under what is known as the "American Rule."[8] See Camden 1 Condominium Association, Inc. v. Dunkle, 946 F.2d 768 (11th Cir. 1991) and Rothenberg v. Security Management Company, 736 F.2d 1470 (11th Cir. 1984) (exception from "American Rule" is when a party or attorney acted in bad faith, vexatiously, wantonly or for oppressive purposes). This $300,000.00 payment was blessed by K & S, with no benefit to Post or Post Shareholders.

The Camden case notes an exception to the American Rule, with the rationale that sometimes counsel is entitled to attorney's fees based upon a percentage of a fund received, due to equity. Id. at 771. This is allowed "(1) when

---

[7] Moreover, K & S should also be required to pay any necessary costs to educate new counsel to represent Post in this matter (protecting against tainting of facts and evidence).

[8] Any self-serving Affidavits or testimony in the Vasquez Matter regarding the basis for the $300,000.00 payment, including but not limited to any breakdown of attorney hours spent drafting documents, having discussions with other counsel, etc. are of no assistance to K & S, based upon case law.

litigation indirectly confers substantial monetary or nonmonetary benefits on members of an ascertainable class [derivative group] and (2) when the court's jurisdiction over the subject matter of the suit, and over a named defendant who is a collective representative of the class, makes possible an award that will operate to spread the costs proportionately among class members." Id

The instant case does not meet this exception.  Notably, such was not discussed by the Court in the Vasquez Matter.  Moreover, K & S did not explain, nor request an explanation, of why this exception would apply in the Vasquez Matter.  Additionally, the Court in the Vasquez Matter did not address the twelve (12) prongs of the Johnson Test, also referred to in Camden, which requires in determining the amount of attorney's fees, among other things, a computation of appropriate attorney's fees to include an analysis of (1) the skill requisite to perform the legal service properly and (2) the amount involved and the results obtained. Id. at fn. 3.

The Vasquez Matter attorneys should not have received $300,000.00, or any sum.[9]   Ms. Cannon admitted to a failure to wait on the filing of a derivative suit properly, by neglecting the ninety (90) day rule, which she was not confident was

---

[9] The Camden Court noted that in most common fund cases, attorney's fees usually fall "between 20% to 30% of the fund." Id. at 774.  In the Vasquez Matter, 30% of

ignorable (and a rule of which K & S was aware). She refused to take depositions. Additionally, the results obtained in the Vasquez Matter only benefited Ms. Cannon and other Vasquez lawyers and the individual defendants in that matter, and certain of the Individual Defendants in this matter. Neither Post or its Shareholders benefited. Finally, there was no showing of bad faith by the attorneys to Post (K & S)[10] or the attorneys for the individual defendants therein, entitling the Vasquez attorneys to an exception to the American Rule. See also Gordon v. Heimann, 715 F.2d 531 (11th Cir. 1983) (attorneys fees generally not awarded except if suit or defense is groundless).

## 3.  K & S Must Be Disqualified Because Some Of Its Members Are Witnesses

Leventhal anticipates K & S, for Post, will argue none of its members are witnesses, but that only communications protected by the attorney client privilege occurred. Based upon the totality of the circumstances and as evidenced by the facts, such anticipated assertion by K & S would be inappropriate.

First, it is long-held that the statutory attorney-client privileges are conferred for the benefit of clients, rather than their attorneys. See Southern Guaranty Insurance Company of America v. Ash, 192 Ga. App. 24, 383 S.E.2d 579 (1989)

---

the zero dollars received by Post Shareholders or even the Vasquez Plaintiffs amounts to zero, not $300,000.00.

and Marriott Corporation v. American Academy of Psychotherapists, Inc., 157 Ga. App. 497, 277 S.E.2d 785 (1981).[11]   Thus, unless this Court is convinced that K & S is asserting the privilege for Post rather than in an effort to protect some of the actions K & S took in failing to advise Post, for example, that independent, unbiased counsel was necessary to the Special Litigation Committee, the Vasquez Settlement, and investigation, or that K & S should not represent Post and Goddard at the same time, this Court should grant this Motion and disqualify K & S.

Secondly, any privilege that may have existed has been waived or breached.[12]

### A.   Members of K & S are witnesses to relevant discussions that are not protected by the attorney-client privilege

The first issue is whether any discussion in the Derivative Demand Discussion Meetings or any of the Special Committee Meetings (the "**Meetings**") and investigations by Post Board members and K & S is protected by the attorney-client privilege "owned" by Post.

Leventhal notes these Meetings were not private or so-called "executive

[10] If there was bad faith on the part of K & S, this is another reason for disqualification.
[11] This Court may inquire into whether any attorney-client privilege argument is being extended by Post, or rather whether it is being invoked by K & S to protect itself; a Receiver could also waive such.

sessions." Moreover, Minutes of these Meetings were published to Leventhal and also by Post and K & S in the Record of this Court and were available to all Shareholders.[13]  Thus, Leventhal contends, supported by case law, the discussions were not private and no privilege attached.  The facts underlying the Minutes are discoverable because K & S was at the Meetings as a witness.[14]  K & S was at the Meetings to investigate the facts of whether the Individual Defendants (including Goddard, whom K & S expressly represented), who had directed the payment to K & S of presumably huge legal fees over the years (perhaps millions of dollars), had acted in the manner as alleged by Leventhal in the Derivative Demand Letter.

In Southern, supra, the Court emphasized that the attorney-client privilege does "not extend public policy protection to communications made by lawyers to their corporate or individual clients which are not of a confidential nature."  192 Ga. App. at 28.    In other words, "[t]he privilege does not simply follow an

---

[12] A receiver appointed by this Court could waive any privileges that may have existed.

[13] To the extent there were Meetings to which K & S did not admit, Leventhal asserts all rights to the discovery of such and the facts underlying.

[14] K & S states in the K & S May 3rd Letter that it was hired by  Post "as its legal counsel to conduct the investigation . . . ."Of course, K & S had to know this was an inherent conflict.  See Oracle, Peller, Stepak, infra.  It is not as if K & S was inexperienced counsel.  In fact, at the Vasquez Settlement Hearing, K & S, by and through Mr. Pope, adopted all statements made by Mr. Latham, who spoke to the Court about all the experience of the attorneys in derivative actions and related proceedings.  See Motion and Vasquez Transcript.

attorney by virtue of his profession . . . " Id. (citations omitted).  The Court went on to note:

> Thus, where the attorney acts merely . . . as a business adviser . . . the privilege is inapplicable . . . The privilege would never be available to allow a corporation to funnel its papers and documents into the hands of its lawyers for custodial purposes and thereby avoid disclosure . . . Id. (citations omitted).

In Marriott, supra, at trial, the plaintiff admitted into evidence a document written from the defendant's director of marketing to defendant's in house counsel, using the document for impeachment purposes.  157 Ga. App. at 501.  On appeal, the defendant contended it was privileged.  The Court discussed that even if the document was privileged:

> The privileged communication may be a shield of defense as to crimes already committed, but it can not be used as a sword or weapon of offense to enable persons to carry out contemplated crimes against society, frauds, or perjuries. Id. at 502. [15]

The Marriott case provides a "test" to determine whether employee

---

[15] In Marriott, the Court found that the document did call into question certain testimony by the director of marketing, but this was not egregious enough to constitute perjury or fraud.  The plaintiff also argued that the defendant had waived the privilege, but that Court found that it was a letter between client and attorney, and therefore protected, even if voluntarily or accidentally provided by defendant to plaintiffs. A letter from a client to an attorney is not the same as Minutes of a Board Meeting condensed by non-attorney Board members, of course, with respect to non-private matters.  A letter from a client to an attorney is presumed confidential.  Such a letter is dissimilar to Minutes of a non-private Meeting where a non-attorney takes notes and drafts the written Minutes, given no

communications can be classified as the corporate client's communications, thus making the attorney-client privilege applicable to the employee's communication. The <u>Marriott</u> test is a five-prong test, with a showing of attorney-client privilege only if all five (5) requirements are met: (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents. <u>Id</u>.

Applying the <u>Marriott</u> test to the instant case, it is clear that the privilege does not attach to the communications at the Meetings because the communications fail on at least two (2) prongs. Specifically, the communications of the Board Members or K & S in the Meetings were not for the purpose of legal advice but for what was supposed to be an unbiased, independent, examination of facts. Additionally, the Minutes were expected to be disseminated beyond the corporate structure by both Post and the Individual Defendants. Since the communications were not privileged in the Meetings, Leventhal is entitled to

executive session occurred.

information regarding the facts of the Meeting, which underlie the Minutes.  Since K & S actively participated in the Meetings (not proper counsel for executive sessions, which did not occur) K & S could not be proper counsel, in any event.

In <u>Eglin Federal Credit Union v. Cantor, Fitzgerald Securities Corp.</u>, 91 F.R.D. 414 (N.D. Ga. 1981), the Federal Courts had an opportunity to examine the specific issue regarding minutes of a board meeting.  In <u>Eglin</u>, the defendant moved to compel documents from the plaintiff, including minutes from a board meeting.  The plaintiff invoked the attorney-client privilege with regard to board minutes.  The defendant contended the plaintiff had waived any privilege.

The <u>Eglin</u> Court noted that the Supreme Court of the United States used a "case by case" approach to determine the appropriateness of the corporation's ability to successfully invoke its attorney-client privilege.  <u>Id</u>. at 418 (similar to the "totality of circumstances" examination noted by the <u>Southern</u> Court).   The plaintiff argued that the National Credit Union Administration ("**NCUA**") attended the plaintiff's Board Meetings in the function of legal counsel and therefore the minutes were privileged.  The Court disagreed, stating that the NCUA attended *for the purpose of investigation*.  Thus, the attorney-client privilege was inapplicable because "the third parties having served more in the capacity of investigators than

legal advisers." Id. at 419.[16]

Applying Eglin to the totality of the facts in the instant case evidences that the Minutes are not privileged. Moreover, members of K & S, who attended the Meetings, could only serve in the role of investigators. Leventhal asserts that since case law indicates the Minutes are not privileged and that the members of K & S were "investigators" rather than legal advisers, then it follows that the facts underlying the Minutes are not privileged.

Even if a privilege did ever exist, once information is disseminated to any third party the privilege is waived, further supporting the requirement of independent counsel from corporate counsel. In Zielinski v. Clorox Company, 270 Ga. 38, 504 S.E.2d 683 (1998), the employee, Zielinski, sued his employer, Clorox, as well as Castleberry, his supervisor. At trial, the Zielinski wanted to impeach Castleberry's testimony with a transcript of a meeting, but Castleberry objected, contending attorney-client privilege.

A copy of the transcript of the meeting had been provided to the D.A.'s

---

[16] See also Stepak, discussed in detail infra (noting that with respect to minutes of the meetings based on that shareholder's demand, any ambiguities in the minutes would be construed against the conflicted law firm, as the law firm is alleged to have dominated the investigation – the same allegation made by Leventhal in the Complaint and Amended Complaint), all supporting why K & S could not be counsel to Post and the Special Litigation Committee, or either (but did not want to risk "outside independent" counsel).

office.  The Court said even assuming an attorney-client privilege existed at the meeting, the privilege was waived when the corporation forwarded a copy of the transcript to the D.A.'s office.  See also Mikart, Inc. V. Marquez, 211 Ga. App. 209, 438 S.E.2d 633 (1993) (holding corporation waived attorney-client privilege concerning letter from corporation's attorney to its president by making letter part of corporation's minutes and producing letter as part of demand by stockholder).

Leventhal would be entitled to transcripts of the (non-executive session) Meetings, if they existed, since the substance of the Meetings was not privileged.[17] Since they do not exist, in lieu of available transcripts, Leventhal is entitled to question the witnesses – including the members of K & S, the most sophisticated, domineering witnesses.

### B. Members of K & S are witnesses to relevant discussions, failing to serve as an independent and unbiased investigators; K & S therefore should be disqualified from representing Post

As the facts evidence, K & S provided legal advice to certain of the Individual Defendants and Post in communications and such with Leventhal prior to the filing of the Complaint, clearly seeking to protect, among others, Defendant Goddard from claims of, among others, Post.  K & S then veered into the non-legal advisory role of "investigator" into the allegations made by Leventhal.  K & S then

returned to sending letters to Leventhal as a legal advocate, denying the right of Leventhal to inspect records of Post and denying the Concerns in the Derivative Demand Letter, seeking to protect, at least, Goddard.  Once Leventhal brought suit against K & S and the Individual Defendants, K & S embraced the role of litigator, drafting and filing pleadings on behalf of Post and responding to Motions and pleadings by Leventhal, etc.

The fact is, K & S is a witness to events, particularly the "investigation" and to the lack of proper business judgment by the Individual Directors on behalf of Post, including their perpetrating frauds against the Shareholders.  K & S chose to improperly intertwine roles it undertook, surely being financially compensated for each role undertaken, at the approval of certain of the Individual Defendants.  K & S should be disqualified and should not be allowed to crouch behind the protective wall of the attorney-client privilege and right of Post to counsel of its choice, when that privilege and choice has been irreparably damaged by K & S.

Evidence of K & S's inappropriate intermingling of roles and function is in contravention of the law. See In Re Oracle Securities Litigation, 819 F. Supp. 1176 (N.D. Ca. 1993) and Peller v. Southern Company, 911 F.2d 1534 (11th Cir. 1990). Georgia law makes clear that a Court must examine competent evidence in

---

[17] Additionally, the substance of the Meetings, captured in the Minutes, were the

evaluating the propriety of a special litigation committee's actions.  See <u>Millsap v.</u>
<u>American Family Corp.</u>, 208 Ga. App. 230, 430 S.E.2d 385 (1993).  It is apparent
that "competent evidence" cannot derive from the investigation by counsel where
the facts show the likelihood that counsel is biased by its prior legal representation.

In <u>Oracle</u>, the Court examined a derivative settlement and the role of counsel
in that settlement.   The Court stated that if the same counsel represents the
corporation and the director and officer defendants, then the interests of the
corporation is not likely to receive sufficient protection. The Court pointed out that
it was wrong because counsel that has represented the corporate interests are:

> Inevitably subservient to the interests of the defendant directors and
> officers whom they serve. . . .  [They are] too financially dependent on
> the board to be disinterested. . . There should be <u>no</u> prior ties to the
> individual or the corporation, the Court found.  <u>Id</u>. at 1188-89.

See also <u>Ramada Franchise System, Inc. v. Hotel of Gainesville Associates</u>, 988 F.
Supp. 1460, 1463  (N.D. Ga. 1997) (holding courts must ensure that trust and
loyalty owed by lawyers to their clients are not compromised).[18]

The Federal Courts have also examined this issue in a case with similarities
to the instant matter.  In <u>Stepak v. Addison</u>, 20 F.3d 398 (11th Cir. 1994), the Court
emphasized:

---

summary of Individual Defendant Cohen.
[18] Which a receiver could ensure.

> [T]o properly distinguish between meritorious and frivolous shareholder allegations, corporate counsel must be able to exercise independent professional judgment, free of any bias in favor of his individual clients. <u>Id</u>. at 404-05 (citations omitted).

In <u>Stepak</u>, the shareholder wrote and demanded that the company bring suit for damages against directors and officers of the company for breach of fiduciary duties. The attorneys for the company, Troutman Sanders, responded and stated there would be a "thorough review" of the shareholder's concerns. Although an independent law firm was retained, Troutman Sanders conducted a majority of the investigation and remained involved in meetings and presentations. After an "investigation," the shareholder's demand was rejected. Troutman Sanders then wrote to the shareholder rejecting the demand. <u>Id</u>. Troutman Sanders also prepared the minutes from the meetings. <u>Id</u>. at 407.

In the subsequently filed lawsuit, the shareholder contended that the "investigation" was dominated by a law firm that had represented the individual defendants in an earlier matter.

The Eleventh Circuit noted that "[a]lthough the corporate entity is a nominal defendant, it is in reality the ultimate beneficiary of any recover against the insider defendants . . . Thus, if the derivative suit is meritorious, the interests of the

corporate entity and the interests of the insider defendants are likely to be directly adverse." Id. at 404.[19]

As the Stepak court viewed it, the issue was whether the law firm could "render truly impartial advice to the corporate client where the interests of his individual clients will inevitably be affected by the character of the corporation's response to the suit." Id. The Court found that the only way a demand could be properly examined is if it was by "independent counsel, *unencumbered by potentially conflicting obligations to any defendant officer*"(emphasis in original). Id. at 405. The Court went on:

> When a board chooses to delegate its investigatory duties, it must do so
> reasonably . . . Likewise, when a board chooses to entrust its
> investigation to a law firm – and it is unquestionably the board's
> prerogative to do so – the directors must ensure that counsel is capable of
> independently evaluating the corporation's interests . . . There is a strong
> possibility that a `lingering allegiance' toward the insider defendants will

---

[19] Leventhal reiterates that during the course of the Vasquez Matter, when Leventhal expressed concerns about the conflict of K & S, it was K & S who was writing letters to Leventhal stating it represented both Post and Goddard with respect to Leventhal (K & S was not attorney of record for Goddard in the Vasquez Matter). K & S also approved the Vasquez Settlement, with no benefit to Post, even though the Settlement was in contradiction of the law and significantly benefited, among others, Goddard. See Sterling v. Stewart, 158 F.3d 1199 (11th Cir. 1998) (in evaluating whether a derivative settlement is fair, the court examines the likelihood of success, range of possible discovery; point on or below range of discovery at which settlement is fair, adequate and reasonable; complexity, expense and duration of litigation; substance and amount of opposition to settlement and stage of proceedings at which settlement was achieved). Vasquez is on appeal by Leventhal, with costs being paid this week.

color or otherwise bias counsel's investigation . . .[and] [t]he risk of spill-over loyalties . . . " Id. at 405-06. [20]

In this case, K & S, as a law firm, has been, among other things, too financially dependent on the Board and certain of the Individual Defendants, to be disinterested. Having formulated and directed the purported investigation into the improper activities of the Individual Defendants, K & S is not unbiased; they are too interested in their remaining counsel to Post and possibly harbor concern for their own past actionable act or failure to act with respect to Post. As in Oracle and Stepak, there should be counsel appointed with absolutely no ties to Post or its directors, not only for the Special Litigation Committee. There is an actual conflict of interest.

K & S is a witness to its own actions, as well as the actions taken by Post in purportedly "investigating" the claims of Leventhal. At a minimum, K & S

---

[20] The Stepak Court also focused on the struggle the law firm would have with respect to the ethical duty to maintain confidences and secrets, which Leventhal shows a receiver could address. Also purportedly to investigate thoroughly and independently, the law firm would be bound by its duty to prevent "the disclosure of [information] which would be embarrassing or would be likely to be detrimental to the client. . . The lawyer should not accept employment that `might require such disclosure.'" Id. at 406. If a conflicted firm is selected to conduct an investigation, "[s]election of such a firm to conduct a board's investigation turns a blind eye to material information that would otherwise be available to the board, and therefore falls short of the standards that shareholders have a right to expect from the board." Id.

stepped outside its role of attorney for Post when it began writing letters to Leventhal expressing its representation of Goddard as well as Post.  That was exacerbated by the fact that at the same time, Goddard was a defendant in the Vasquez Matter.  K & S advocated for Goddard to the detriment of Post and its Shareholders, breaching its duty, further mandating its disqualification.

### 4. The Disqualification Of K & S Takes Precedent Over Any Right Of Post To Counsel Of Its Choice [Which Disqualification, Informed Shareholders, Leventhal Posits Would Support]

Leventhal agrees that Post does have the right to counsel of its choice. However, when a party's attorney is put on notice that he will be a witness, he must be disqualified. See Stewart v. Bank of America, 203 F.R.D. 585 (M.D. Ga. 2001). Moreover, surely K & S is aware of Oracle and Stepak, with enough experience to know it should have disqualified itself absent this Motion by Leventhal.

Further, the *Rules of Professional Conduct of the State Bar of Georgia* stress that an attorney should not represent any person with whom he has a conflict, or even the "appearance" of a conflict. Even in matters where the right to counsel of one's choice is a constitutional mandate, at times it is proper to disqualify that chosen counsel.  The criminal citation which discusses this is the matter of Hudson v. The State, 234 Ga.App. 895, 508 S.E.2d 682 (1998).  Even more revealing is the matter of Redd v. The State, 264 Ga. 399, 444 S.E.2d 776 (1994), in which it was

determined that the trial court was "proper" in disqualifying defense counsel for one of the co-defendants, because that defense counsel had once been associated on other matters with counsel for the other co-defendant.

Even with disqualification, even assuming an argument could be made that K & S is somehow "indispensable" to the action, it certainly would be able to "communicate" with counsel for Post under court guidance. Therefore, no harm would occur from disqualification. See In the Matter of Friedman, 270 Ga. 5, 505 S.E.2d 727 (1998) [as an example of an attorney having engaged in misconduct aggravated by " . . . selfish motive . . . ];" see also Arnall, Golden & Gregory v. Health Service Centers, Inc., 197 Ga.App. 791, 399 S.E.2d 565 (1990) [holding that the law firm impermissibly concealed that a contract it had drafted and destroyed (because it did not contain a proper option to acquire certain property, as promised), would be sufficient to show fraud by the attorneys against their own client]. Separate counsel from K & S may take a significantly different approach to this matter, being concerned solely with the Shareholders of Post, possibly asserting claims against K & S and the Individual Defendants.

## VI. CONCLUSION

This Court, in governing the control of proceedings before it, Leventhal most respectfully submits, should mandate the disqualification of K & S or, at a

minimum, require that truly independent counsel, evaluate this matter, advising Post as to how its rights could be most protected, including preserving rights and claims against K & S, with discovery propounded on K & S.

For the foregoing reasons, Leventhal submits this Court should enter an Order disqualifying the law firm of K & S and each and every attorney who is employed by, a partner in, or "of counsel" to the Law Firm of K & S from acting or otherwise being counsel for Post or any of the Individual Defendants, or any of them, barring K & S and each and every attorney who is employed by, a partner in, or "of counsel" to the Law Firm of K & S from and against any such representation, *ab initio*.

This the 14th day of January, 2005.

RESPECTFULLY SUBMITTED:
Plaintiff:

RONALD S. LEVENTHAL
*In Propria Persona*

Post Office Box 680096
Marietta, Georgia 30068-0096
Telephone: (770) 578-0123
Telecopier: (770) 578-6514

C:\My Doc\Post\Derivative Action\Motion to Disqualify K & S BRIEF v_5.doc

- 25 -

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **RONALD S. LEVENTHAL**, an Individual, Directly, Derivatively on behalf of Post Properties, Inc., a Georgia corporation, and Representatively on behalf of all other similarly situated Shareholders of Post Properties, Inc., a Georgia corporation, | **CIVIL ACTION FILE NUMBER** |
| | **1:04-CV-1445-JTC** |
| **Plaintiff,** | |
| **v.** | **JUDGE JACK T. CAMP** |
| **ROBERT C. GODDARD, III,** an Individual and as Chairman of the Board of Post Properties, Inc., a Georgia corporation, **DAVID P. STOCKERT,** an Individual, **SHERRY W. COHEN,** an Individual, **JOHN T. GLOVER**, an Individual, **CHRISTOPHER J. PAPA**, an Individual, **THOMAS D. SENKBEIL,** an Individual, and **THOMAS L. WILKES,** an Individual, | **CERTIFICATE OF** **COMPLIANCE** |
| **Defendants,** | |
| **AND POST PROPERTIES, INC.,** a Georgia corporation, | |
| **Indispensable Party and Nominal.** | |
| **Defendant.** | |

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1D, N.D. Ga., Plaintiff hereby certifies that this BRIEF AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISQUALIFY THE LAW FIRM OF KING AND SPALDING LLP (INCLUDING ITS PARTNERS) AS COUNSEL FOR INDISPENSABLE PARTY AND NOMINAL DEFENDANT POST PROPERTIES, INC. has been prepared with Times New Roman, 14 Point, approved by this Court in L.R. 5.1B, N.D. Ga., and with a one and one half (1½") inch top and one (1") inch left margin, as approved by this Court in L.R. 5.1 C, N.D. Ga.

This 14th day of January, 2005.

_____
Ronald S. Leventhal
*In Propria Persona*

Post Office Box 680096
Marietta, Georgia 30068-0096
Telephone: (770) 578-0123
Telecopier: (770) 578-6514
rsleventhal@interfinancial.net

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## <u>ATLANTA DIVISION</u>

| | | |
|---|---|---|
| **RONALD S. LEVENTHAL,** an Individual, Directly, Derivatively on behalf of Post Properties, Inc., a Georgia corporation, and Representatively on behalf of all other similarly situated Shareholders of Post Properties, Inc., a Georgia corporation, | : : : : : : : : : : : | **CIVIL ACTION FILE NUMBER: 1:04-CV-1445-JTC** |
| **Plaintiff,** | : : | |
| **v.** | : : : | **JUDGE JACK T. CAMP** |
| **ROBERT C. GODDARD, III,** an Individual and as Chairman of the Board of Post Properties, Inc., a Georgia corporation, **DAVID P. STOCKERT,** an Individual**, SHERRY W. COHEN,** an Individual**, JOHN T. GLOVER,** an Individual, **CHRISTOPHER J. PAPA**, an Individual, **THOMAS D. SENKBEIL,** an Individual, and **THOMAS L. WILKES,** an Individual, | : : : : : : : : : : : : : : | **CERTIFICATE OF SERVICE** |
| **Defendants,** | : : | |
| **AND POST PROPERTIES, INC.,** a Georgia corporation, | : : : | |
| **Indispensable Party and Nominal Defendant.** | : : | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the within and foregoing BRIEF IN SUPPORT OF MOTION TO DISQUALIFY THE LAW FIRM OF KING AND SPALDING LLP (INCLUDING ITS PARTNERS) AS COUNSEL FOR INDISPENSABLE PARTY AND NOMINAL DEFENDANT POST PROPERTIES, INC. by serving all parties to this matter, or their attorneys, by enclosing a true, correct and complete copy of same in an envelope, deposited in the United States Mail, prepaid first class postage affixed thereon, addressed as follows:

> The Honorable Luther B. Thomas
> Clerk of the United States District Court
> Northern District of Georgia
> 2211 U.S. Courthouse
> 75 Spring Street, S.W.
> Atlanta, Georgia 30303
>
> Mr. John L. Latham
> Ms. Oni A. Holley
> Attorneys at Law
> ALSTON & BIRD LLP
> One Atlantic Center
> 1201 West Peachtree Street
> Atlanta, Georgia  30309

Mr. M. Robert Thornton
Mr. B. Warren Pope
Attorneys at Law
KING & SPALDING LLP
Forty-Second (42nd) Floor
191 Peachtree Street
Atlanta, Georgia  30303-1763

Mr. Cary Ichter
Ms. Beth T. Baer
Attorneys at Law
Special Limited Counsel to Plaintiff
BALCH & BINGHAM LLP
Fourteen Piedmont Center, Suite 1100
3535 Piedmont Road NE
Atlanta, GA 30305

This 14th day of January, 2005.

Ronald S. Leventhal
*In Propria Persona*

Post Office Box 680096
Marietta, Georgia 30068-0096
Telephone:  (770) 578-0123
Telecopier:  (770) 578-6514
rsleventhal@interfinancial.net